# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**KRISTOPHER S. OBERG**,

        Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of Social Security,

        Defendant.

Case No. 6:13-cv-01004-SI

**OPINION AND ORDER**

Max Rae, P.O. Box 7790, Salem, OR, 97303. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Kathy Reif, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Mr. Kristopher S. Oberg seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons,

PAGE 1 – OPINION AND ORDER

the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.[1]

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

---

[1] Mr. Oberg had also moved for leave to file a memorandum of supplemental authorities. Dkt. 18. The Court granted that motion and the supplemental memorandum and authorities have been considered.

## BACKGROUND

### A.  Application

Mr. Oberg protectively filed an application for DIB and SSI on November 7, 2007.

AR 148-153, 154-158. In both applications, he alleged disability beginning on January 1, 2003.

*Id*. Mr. Oberg was born November 15, 1966; he was 36 on the alleged disability onset date.

AR 148, 154.

Mr. Oberg alleges disability due to depression, neck pain, and knee pain. AR 174. The

Commissioner denied Mr. Oberg's application initially and upon reconsideration; thereafter, he

requested a hearing before an Administrative Law Judge ("ALJ"). AR 102, 107, 114, 116, 122,

123. After an administrative hearing held on June 22, 2010, the ALJ ruled that Mr. Oberg is not

disabled. AR 36-46. The Appeals Council denied Mr. Oberg's request for review, making the

ALJ's decision the final decision of the Commissioner. AR 1. Mr. Oberg now seeks judicial

review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c),; 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Mr. Oberg meets the insured status for DIB benefits through March 30, 2009. AR 38. The ALJ then performed the sequential analysis. AR 38-45. At step one, the ALJ found that Mr. Oberg had engaged in brief periods of substantial gainful activity since his alleged onset date, but that there had been one or more continuous 12-month periods during that Mr. Oberg did not engage in substantial gainful activity. AR 38. At step two, the ALJ concluded that Mr. Oberg had the following severe impairments: cervical and lumbar spine degenerative disc disease, left knee arthritis, and major depressive disorder. AR 38. The ALJ also found that Mr. Oberg had a non-severe impairment of anxiety. AR 39. At step three, the ALJ ruled that Mr. Oberg did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. *Id.*

The ALJ next assessed Mr. Oberg's RFC. The ALJ found that Mr. Oberg retained the capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> He can stand/walk for about six out of eight hours and sit for about six out of eight hours. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. He is limited to unskilled work as defined in the Dictionary of Occupational Titles. He can have only occasional public and co-worker contact with no teamwork.

AR 40. In reaching this conclusion, the ALJ considered Mr. Oberg's testimony, but found that it was not fully credible. AR 42. The ALJ considered the lay testimony of Wanda Hildebrant, but also found that it was not fully credible. *Id.* The ALJ gave great weight to the opinions of the state reviewing physicians, as well as the opinions of Drs. Robert Pollard and Marcus Buza. AR 43. The ALJ gave no weight to the May 2008 Occupational Medicine Disability Evaluation of Dr. Steve Truong because of its "inadequate consideration of [Mr.Oberg's] subjective complaints and its inconsistency with the substantive evidence of record." *Id.*

At step four, the ALJ determined that, considering his RFC, Mr. Oberg had no past relevant work. AR 44. At step five, the ALJ concluded that, based on the testimony of a vocational expert ("VE") and section 204.00 of the Medical-Vocational Guidelines, Mr. Oberg could perform jobs that existed in significant numbers in the national economy. AR 44-45. Thus, the ALJ ruled that Mr. Oberg is not disabled. AR 45.

## DISCUSSION

Mr. Oberg argues that the ALJ erred by: (A) failing to reopen Mr. Oberg's prior application; (B) failing to consider whether Mr. Oberg's work activity was an unsuccessful work attempt or a trial work attempt at step one; (C) improperly rejecting the lay witness evidence of the Oregon's Vocational Rehabilitation Division's ("VRD") and Wanda Hildebrant; (D) not offering clear and convincing evidence for discrediting Mr. Oberg's subjective symptom

testimony; (E) improperly formulating an RFC that did not properly assess all of Mr Oberg's

limitations and improperly relying on a the VE's conclusion based on an incomplete

hypothetical; and (F) failing to consider evidence submitted to the Appeals Council that

demonstrate a change in Mr. Oberg's date last insured.

## A. *De facto* Reopening of Mr. Oberg's Previous Disability Application

Mr. Oberg argues that because the "ALJ adjudicated the merits of [Mr. Oberg's]

disability back to January 1, 2003," his determination *de facto* reopened Mr. Oberg's earlier

application for benefits that was denied in 2006. As a result, Mr. Oberg argues that the denial of

his previous application should be redetermined.

Generally, the Commissioner's refusal to reopen a decision is not reviewable by district

Courts. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). A refusal to reopen is only subject to

judicial review if the claimant demonstrates a colorable constitutional due process violation.

*Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008). Reopening may also occur where "the

Commissioner considers on the merits the issue of the claimant's disability during the already

adjudicated-period." *Lester*, 81 F.3d at 827 n.3 (internal quotation marks omitted) (citations

omitted).

Mr. Oberg does not argue that the previous application involves an alleged disability date

dating further back than the one considered in the pending application (January 1, 2003), that the

ALJ did not consider all relevant alleged disability dates in resolving the current application, or

that the ALJ applied a preclusive effect to any previous disability determination. The

Commissioner responds that the ALJ did not, in fact, give preclusive effect to Mr. Oberg's

previous disability determination. Thus, the evidence and argument before this Court shows that

the Commissioner's evaluation of the current application includes the alleged disability period

from Mr. Oberg's previous application and is not applying any preclusive effect to the previous

disability determination. The current adjudication is, therefore, serving the practical effect of reopening the previous application, as conceded by the Commissioner. Accordingly, formally reopening the previous application is unnecessary.

## B.  Work Activity Finding at Step One

At step one, the ALJ considered Mr. Oberg's work activity from 2006-2008 and found that Mr. Oberg had "engaged in brief periods of substantial gainful activity." AR 38. The ALJ also concluded that "there has been a continuous 12-month period(s) during which [Mr. Oberg] did not engage in substantial gainful activity" and based the remainder of his findings on these periods. *Id.* Mr. Oberg asserts that the ALJ erred by failing to consider whether these work attempts by Mr. Oberg were "trial work periods" or "unsuccessful work attempts" as contemplated by the Social Security regulations.

### 1.  Trial Work Period

A claimant is entitled to a trial work period of up to nine months "during which [the claimant] may test [his] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). A claimant is entitled to a trial work period if he is determined to be eligible for disability benefits. 20 C.F.R. §§ 404.1592(d)(1). A trial work period begins the month in which a claimant becomes entitled to disability insurance benefits but cannot begin before the month in which a claimant files application for benefits. 20 C.F.R. § 404.1592(e). Work attempts made before "any month prior to the month of [the claimant's] application for disability benefits" will not be considered trial work periods. § 404.1592(d)(2)(iv). Additionally, a claimant who "perform[s] work demonstrating the ability to engage in substantial gainful activity within 12 months" of their alleged onset date and before notice of any determination or decision regarding their disability is not entitled to a trial work period. § 404.1592(d)(2)(iii).

Mr. Oberg argues that the ALJ erred at step one because he failed to consider whether any of Mr. Oberg's work after his onset date could be considered a trial work period. Because the Court has found, as conceded by the Commissioner, that the adjudication of this application is serving the practical effect of reopening Mr. Oberg's previous application, all work performed after the date of that application is potentially eligible for consideration as a trial work period. 20 C.F.R. §§ 404.1592(d)(2)(iv), 404.1592(e).

The Commissioner argues that trial work periods are only available after a claimant has been determined to be eligible for disability benefits and that it is a protection for disability recipients to attempt to reenter the work force without losing their benefits. This interpretation is counter, however, to the application of the trial work period by United States Court of Appeals for the Ninth Circuit. *See March v. Comm'r of Soc. Sec. Admin.*, 462 F.. App'x. 671, 673 n.1 (9th Cir. 2011) (applying trial work period to an initial determination of disability); *Callihan v. Shahala*, 1995 WL 453256, at *1 (9th Cir. 1995) (noting in deciding an initial determination of disability that "[a]n applicant is entitled to a trial work period during which [he] may test [his] ability to work and still be considered disabled." (alterations in original) (quotation marks and citation omitted)); *Calderon v. U.S. R.R. Retirement Bd.*, 780 F.2d 812, 815 (9th Cir. 1986) ("The 'trial work period' expressly provided by section 1382c(a)(4)(A) of the SSA allows for a trial work period of up to nine months *after* an application for disability is filed. In considering the rationale that underlies section 1382c(a)(4)(A), the Sixth Circuit in *Parish* [*v. Califano*, 642 F.2d 188 (6th Cir. 1981)] held that '[i]t would be reasonable to apply the same principle to an attempt to work *before* filing an application for benefits.' (emphasis added). Unsuccessful trial work *before* applying for social security benefits, therefore, is also deemed not to have been

rendered for the purpose of determining when an individual is entitled to disability payments.") (emphasis in original) (citations omitted). Accordingly, the Commissioner's argument fails.

### 2. Unsuccessful Work Attempt

Generally, an unsuccessful work attempt is work that occurs after a significant break in the continuity of work, lasts less than six months, and is stopped or reduced such that earning levels fall below the defined substantial gainful activity levels. 20 C.F.R. § 404.1574(c). The Commissioner offers no argument as to why the ALJ did not err in failing to consider whether Mr. Oberg's "brief" periods of work constituted unsuccessful work attempts.

### 3. Conclusion

The ALJ expressly states that his findings after step one only "address the period(s) the claimant did not engage in substantial gainful activity." AR 38. Thus, the ALJ found Mr. Oberg not disabled at step one for the time periods during which the ALJ found Mr. Oberg had been substantially gainfully employed. The ALJ does not identify those time periods and does not analyze whether those time periods were "trial work periods" or "unsuccessful work attempts" and, thus, not substantial gainful activity. The failure to analyze whether those periods were exceptions to successful gainful activity is prejudicial to Mr. Oberg because to the extent he had been found disabled, or might be found disabled on remand, he would not receive benefits for those time periods to which he was found not disabled at step one. Upon remand, the ALJ should analyze whether the work performed by Mr. Oberg constituted a trial work period or an unsuccessful work attempt.

## C. Lay Witness Testimony

### 1. Standards

A lay witness' testimony is probative to the extent it demonstrates the impact of a claimant's symptoms on his ability to work. *See Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1053 (9th Cir. 2001). Lay testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). If the Commissioner decides to disregard lay witness testimony, he "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919l; s*ee also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout*, 454 F.3d at 1053. Although lay witnesses are not competent to testify to medical diagnoses, they may testify as to a claimant's symptoms or how an impairment affects a claimant's ability to work. *Nguyen v. Chater*, 100 F. 3d 1462, 1467 (9th Cir. 1996). Lay testimony must be consistent with the medical records and cannot establish limitations that are contradicted by medical evidence. *Lewis*, 236 F.3d at 512; *Bruce v. Astrue*, 557 F.3d 113, 116.

The Ninth Circuit has held that lay testimony may not be disregarded without comment. *Id.* The omission of lay testimony by an ALJ may only be upheld if the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. An ALJ is not required to discuss each witness' testimony on an individualized basis. "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009)).

### 2. Oregon Vocational Rehabilitation Categorization

Mr. Oberg argues that the ALJ erred in failing to give weight to the VRD's categorization of Mr. Oberg as "most significantly disabled." Mr. Oberg argues that this designation "demands significant weight" and that the ALJ's failure to consider it in his analysis is reversible error. Defendant responds that the VRD categorization is neither significant nor probative and,

therefore, the ALJ was not obligated to consider it when evaluating Mr. Oberg's symptom evidence.

The VRD categorization was prepared by a vocational counselor, making it lay evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) ("The regulations treat '[p]ublic and private social welfare agency personnel' as 'other sources,' 20 C.F.R. § 404.1513(d)(3), and the ALJ may expressly disregard lay testimony if the ALJ 'gives reasons germane to each witness for doing so.'") (alteration in original) (citation omitted). Evidence from public or private social welfare organizations and their staff, as "other source" lay testimony, is competent if it shows the severity of a claimant's impairment(s) and how the impairment(s) affect the claimant's ability to work. 20 C.F.R. § 404.1513(d)(3); *Dodrill*, 12 F.3d at 918-19.

The ALJ discussed the VRD categorization briefly, noting that the medical evidence and Mr. Oberg's testimony "[indicated] that [Mr. Oberg] has actively participated in Vocational Rehabilitation." AR 41. The ALJ also briefly discussed two Vocational Questionnaires prepared by Mr. Oberg's treating physicians as part of Mr. Oberg's vocational rehabilitation. AR 43.

The ALJ did not, however, discuss evidence prepared by vocational counselor Rhonda Sabin. AR 586-87. Ms. Sabin's eligibility determination discusses Mr. Oberg's impairments, including depression and injuries, and how these impairments affect his ability to work. *Id*. Specifically, Ms. Sabin notes that Mr. Oberg's physical and mental impairments resulted in job loss because of his inability to: "move from one place to another;" "physically manipulate environment;" "perform specific tasks or benefit from training;" and "perform job[s] with physical, emotional, [or] psychological stamina needed." AR 586. Ms. Sabin also noted that Mr. Oberg, with rehabilitation, could prepare for or engage in gainful employment. *Id.*; *see also*

AR 587 (summary stating that vocational rehabilitation will allow Mr. Oberg to return to the work force).

Ms. Sabin's testimony is competent lay witness testimony and should have been addressed by the ALJ. Although the ALJ did not specifically address Ms. Sabin's opinion, the ALJ included the physical limitations identified by Ms. Sabin in the RFC by specifically allowing that Mr. Oberg could perform light work only. AR 40. Accordingly, the ALJ's failure to specifically address Ms. Sabin's testimony as to Mr. Oberg's physical limitations was harmless.

As discussed below, however, the ALJ's RFC fails to properly include Mr. Oberg's mental impairments. Upon remand, in determining Mr. Oberg's RFC with respect to his mental limitations, the ALJ must address Ms. Sabin's relevant testimony.

### 3.  Ms. Hildebrant

Mr. Oberg argues that the ALJ erred in dismissing the lay witness evidence of Ms. Hildebrant. At the hearing, Ms. Hildebrant testified that: (1) Mr. Oberg's "most challenging" problem was anxiety (AR 89); (2) Mr. Oberg was often upset in uncomfortable or stressful situations (*Id.*); (3) Mr. Oberg demonstrated signs of depression, including lack of motivation and being overly emotional (AR 89-90); and (4) Mr. Oberg experienced constant back pain that made it difficult for him to be comfortable. AR 90. The ALJ found Ms. Hildebrant's testimony to be partially credible, but noted that "[t]he substantial evidence of record does not fully corroborate Ms. Hildebrant's testimony and her statements do not warrant a different residual functional capacity. . ." AR 42.

Mr. Oberg argues that Ms. Hildebrant's first-hand observations are "exceptionally probative." These observations, Mr. Oberg claims, bear directly on his ability to work. Specifically, Mr. Oberg argues that Ms. Hildebrant's statements regarding Mr. Oberg's anxiety

and depression demonstrate the limiting impact these symptoms have on his concentration persistence, and pace, and, consequently, his ability to work a standard work shift.

Mr. Oberg's argument is not persuasive. The limitations in Ms. Hildebrant's testimony were vague and general and lack specificity with regards to how they affect Mr. Oberg's ability to work. Ms. Hildebrant indicated that Mr. Oberg's back pain made it difficult for him to move, his anxiety made him stressed and uncomfortable, and his depression made him overly emotional and lacking in motivation. The ALJ reasonably accommodated for these limitations in the RFC to the extent that they are supported by the record.

Mr. Oberg also argues that Ms. Hildebrant's testimony regarding Mr. Oberg's limitations arising from his depression and anxiety demonstrate that these limitations are disabling and prevent Mr. Oberg from performing meaningful work. Although the Court does not agree that Ms. Hildebrant's testimony supports an inference that Mr. Oberg's depression was fully debilitating, even if it did, such a limitation is contradicted by evidence in the record, which is a germane reason to discount lay witness testimony. *See Lewis,* 236 F.3d at 512; *Bruce*, 557 F.3d at 116. The ALJ gave great weight to the opinion of Joshua Boyd, Psy.D. Dr. Boyd concluded that Mr. Oberg's ability to interact with others, sustain concentration and pace, and recall and understand information was only "mildly impaired." AR 43, 415. This opinion, as the ALJ noted, is consistent with much of the evidence in the record. Dr. Boyd and Dr. Frank Lanham both found that, despite mild or moderate limitations on his ability to follow instructions or work with others, Mr. Oberg was still capable of performing a "normal work day." AR 418, 430, 434-36. The ALJ also gave great weight to the opinions of Drs. Buza and Pollard, neither of whom felt that Mr. Oberg's anxiety disorder would result in any functional limitations that would prevent Mr. Oberg from becoming a tattoo artist. AR 578, 601.

The ALJ gave specific reasons germane to Ms. Hildebrant's testimony that were supported by substantial evidence in the record. Accordingly, the ALJ's partial rejection of Ms. Hildebrant's testimony was not error.

## D. Mr. Oberg's Credibility

### 1. Standards

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted)). When doing so, the claimant "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Mr. Oberg asserts that his degenerative disc disease and knee arthritis cause severe limitations, including that: (1) he feels excruciating pain when he tries to squat; (2) he cannot engage in any activity for more than an hour without resting; (3) his knee "gives out" on him on sometimes; and (4) he experiences near-constant pain in his back and knee daily. AR 66-67, 85-

PAGE 16 – OPINION AND ORDER

86, 191-93. Mr. Oberg also testified that his depression makes him feel "useless" and unable to do anything. AR 71. The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms[.]" AR 42. In applying the second step, however, the ALJ concluded that Mr. Oberg's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.*[2]

In support of his credibility finding, the ALJ offered several specific reasons, including: (1) Mr. Oberg has received effective medical treatment; (2) there are multiple instances where Mr. Oberg's conduct and testimony contradict his testimony that he is totally disabled; and (3) Mr. Oberg was a vague witness. AR 41-42. All of these reasons are supported by substantial evidence in the record and provide independent bases for upholding the ALJ's credibility determination.

## 2. Effective Medical Treatment and Inconsistent Reports to Treatment Providers

The ALJ pointed to several instances of effective medical treatment and Mr. Oberg's reports to treatment providers that are inconsistent with his claim of debilitating symptoms. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Favorable responses to treatment may also belie complaints of debilitating

---

[2] Although the Court upholds the ALJ's credibility finding, the Court notes, as it has noted before, that this is a boilerplate statement that has been used inappropriately in many Social Security decisions. *See, e.g.*, *Phillips v. Colvin*, 2014 WL 2013392, at *5 n.2 (D. Or. Apr. 29, 2014); *Allen v. Astrue*, 2012 WL 2921454, at *8 (D. Or. July 17, 2012). Similarly, the Seventh Circuit has held that this boilerplate "is meaningless." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing." *Id.*

symptoms. See *Tommasetti*, 533 F.3d at 1039 (finding that a favorable response to conservative treatment undermined the claimant's reports of the disabling nature of his pain). Here, reports of improvement include that Mr. Oberg reported that his neck and shoulder felt "much better" and "consistently better" after chiropractic treatment and that Mr. Oberg benefits from psychotropic medication. AR 41-42, 438-442, 450, 452-53. Inconsistent reports include that Mr. Oberg reported to his treating physicians that his knee and leg pain was intermittent and, at times, only bothered him "a little." AR 41, 354-55. These are sufficient reasons for the ALJ to discount Mr. Oberg's subjective testimony.

Mr. Oberg argues that the ALJ erred because his mental health problems still persist, despite mental health care. This argument is not persuasive for two reasons. First, the ALJ noted that Mr. Oberg seemed to benefit from psychotropic treatment but is not actively participating in mental health treatment. AR 42. Failure to pursue treatment is a basis on which to discredit testimony of a debilitating impairment. *See Smolen*, 80 F.3d at 1284.

Second, although Mr. Oberg may still suffer some symptoms relating to depression, the evidence of improvement undermines Mr. Oberg's statements regarding the completely disabling nature of his symptoms. The ALJ made specific findings regarding the effective treatment of Mr. Oberg's pain and depression. Although there may be evidence that Mr. Oberg still suffers from some symptoms relating to his impairments, the ALJ's conclusion that Mr. Oberg's improvement belied Mr. Oberg's credibility is a rational interpretation supported by the evidence and the Court will not second-guess this determination. *See Burch*, 400 F.3d at 679 ((holding that where the evidence supports multiple conclusions, including the ALJ's reasonable interpretation, the ALJ's interpretation must be upheld); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that even where the record evidence is somewhat equivocal, a court should

not second-guess the ALJ's judgment when it is supported by substantial evidence). Therefore, the ALJ's conclusion that effective medical treatment detracted from Mr. Oberg's credibility is not error.

### 3. Contradictory Statements and Conduct

The ALJ identified numerous statements made and conduct by Mr. Oberg throughout the record that contradict Mr. Oberg's testimony that he is totally disabled. These include: (1) Mr. Oberg acknowledged that, although he could not return to his former job as a drywaller, he would be capable of other full-time jobs such as driving a forklift (AR 41, 66-67); (2) Mr. Oberg testified that his driver's license was suspended for unpaid fines, and not as a result of any debilitating condition; (AR 41, 67-68); (3) Mr. Oberg underwent vocational training to become a tattoo artist and was released without restrictions to perform that job (AR 41, 578, 581-84, 601); (4) Mr. Oberg was able to perform his job as a ride operator at the state fair in 2009 "pretty good" (AR 41, 68); and (5) at the time of the hearing Mr. Oberg was successfully employed at a job he "enjoys" at Netflix, where he opens and stacks DVDs one day per week and  (AR 41, 66, 68). The ALJ concluded that these statements detract from Mr. Oberg's credibility because they are incompatible with his claims of total disability. AR 41-42.

The ALJ's conclusion is supported by substantial evidence in the record. The statements and conduct cited by the ALJ are inconsistent with a totally debilitating disability.

### 4. Vague Testimony

The ALJ also partially discredited Mr. Oberg's testimony regarding his limitations because "he was unable to describe his anxiety at hearing." AR 42. At the hearing, Mr. Oberg was unable to describe his anxiety beyond that he "just [gets] anxious about things." AR 71. Mr. Oberg was unable to describe any triggers that increased his anxiety or any particular subjects that caused him more anxiety than others. AR 71-72. An ALJ may base a credibility

determination on "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. These "ordinary techniques" include vague testimony from claimants. *See Tommasetti*, 533 F.3d at 1040 (ALJ properly considered claimant's vague explanations regarding work capabilities and symptoms when making credibility determination). The ALJ pointed to a specific instance of Mr. Oberg's vague testimony to support his finding. Therefore, the ALJ's reliance on Mr. Oberg's vague testimony was a clear and convincing reason to find him not fully credible with regard to his symptom testimony.

Because the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Mr. Oberg's testimony, the Court need not reach Mr. Oberg's "credit as true" argument. *Connett v. Banhart*, 340 F.3d 871, 876 (9th Cir. 2003) (credit as true doctrine only applies "where the ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony")

**E.  The ALJ's RFC Assessment and Step Five Finding**

Mr. Oberg argues that the RFC and step five finding are erroneous because: (1) the ALJ "found" that public contact should be "precluded," which is inconsistent with the RFC's limiting Mr. Oberg to "only occasional public and co-worker contact with no teamwork;" (2) the RFC's limitation to "unskilled work" as defined by the Dictionary of Occupational Titles (DOT) fails to adequately quantify Mr.Oberg's moderate difficulties with regard to concentration, persistence, or pace; and (3) the hypothetical to the VE failed to incorporate all of Mr. Oberg's limitations.

### 1.  Inconsistent Statements Regarding Public Contact

Mr. Oberg argues that the ALJ "found" that Mr. Oberg should be "precluded" from any public contact and that this finding is inconsistent with the RFC, which limits public contact to

"occasional" contact. The Court disagrees that the ALJ found that public contact should be "precluded."

The ALJ's RFC assessment and his explanation thereof discuss Mr. Oberg's limitations on contact with the public and contact with co-workers in four instances. First, in the RFC assessment, the ALJ states that "[Mr. Oberg] can have only occasional public contact and co-worker contact with no teamwork." AR 40. Next, in discussing Mr. Oberg's testimony regarding his difficulties getting along with others, the ALJ notes that "[t]he residual functional capacity assessment accommodates this by limiting [Mr. Oberg's] contact with the public and co-workers, including precluding teamwork." AR 42. Later, in discussing the opinion of Dr. Frank. Lahman, the ALJ notes that he adopted Dr. Lahman's findings relating to Mr. Oberg's inability to work with co-workers in a group setting in the RFC, and then "added the additional limitation of precluding public contact." AR 44. Finally, in summarizing his RFC findings, the ALJ states that Mr. Oberg "is limited to no more than occasional public or co-worker contact without any teamwork." *Id*.

The Court finds that the ALJ's statement when discussing the findings of Dr. Lahman that the RFC added the limitation of "precluding" public contact was a typographical error. Other than this notation, the ALJ consistently states that his RFC limits Mr. Oberg to "occasional" public contact. The Court finds this reference to "precluding" public contact to be a mistake that is irrelevant to the ALJ's ultimate disability conclusion. *Stout*, 454 F.3d at 1055.

Even if the ALJ's finding regarding Mr. Oberg's limitation with respect to public contact were ambiguous and not a typographical error, the mistake would still be harmless. Assuming that the ALJ really meant to incorporate the more restrictive limitation of "precluding" public contact, the jobs that the ALJ relied on at step five of laundry sorter, folder, and folding machine

PAGE 21 – OPINION AND ORDER

operator involve no public contact. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) (4th ed. 1991), *available at* 1991 WL 672991 (DOT Code 361.687-014, Laundry Sorter), 1991 WL 673072 (DOT Code 369.687-018, laundry folder), 1991 WL 673069 (DOT Code 369.687-010, folding machine operator). Therefore, even assuming the ALJ's finding was ambiguous and that ambiguity would be resolved in the most conservative manner and require public contact be "precluded," the ALJ's ultimate disability determination would not be affected. Thus, any error is harmless. *Stout*, 454 F.3d at 1055.

### 2.  Moderate Difficulties in Concentration, Persistence, and Pace

Mr. Oberg asserts that the ALJ erred by not incorporating his finding that Mr. Oberg has "moderate difficulties with regard to concentration, persistence or pace" into the RFC and the hypothetical given to the VE. This argument is well taken.

The RFC limits Mr. Oberg to "unskilled work" with no further limitation relating to concentration, persistence, or pace. An ALJ's assessment may "adequately capture[] restrictions related to concentration, persistence, and pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The medical testimony relied upon by the ALJ in *Stubbs–Danielson* found that the plaintiff retained the ability to perform simple tasks notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id. Stubbs–Danielson* is inapplicable, however, to cases where the medical evidence establishes that the plaintiff has restrictions in concentration, persistence, or pace. *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs–Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs– Danielson*, therefore, is inapposite.").

In this case, the medical evidence establishes, as was accepted by the ALJ, that Mr. Oberg has moderate limitations in concentration, persistence, or pace. The issue, then, is whether the ALJ's RFC assessment, which limits Mr. Oberg to "unskilled work" sufficiently translates the medical evidence into functional limitations in the RFC. The Court finds that a limitation to "unskilled work," without more, is insufficient to incorporate Mr. Oberg's moderate limitation on concentration, persistence, or pace. *See Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert. . . . Limiting Lubin 'to one to three step tasks due to pain and prescription drug/marijuana use' did not capture the limitation in concentration, persistence, or pace found by the ALJ."); *Brink*, 343 F. App'x at 212 ("The hypothetical question to the vocational expert should have included not only the limitation to "simple, repetitive work," but also Brink's moderate limitations in concentration, persistence, or pace."); *Doty v. Astrue*, 2014 WL 1269479, at *3 (D. Or. Mar. 26, 2014) ("Unskilled work, by itself, does not adequately capture plaintiff's 'moderate limitation' with regard to concentration, persistence and pace."); *Juarez v. Colvin*, 2014 WL 1155408, *7 (C.D. Cal. Mar. 20, 2014) (finding that because the ALJ expressly found moderate limitations in concentration, persistence, and pace, "the ALJ's RFC determination should have included not only the limitation to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and pace"). Thus, the ALJ erred in his RFC determination by failing to properly incorporate Mr. Oberg's mental limitations.

Because the ALJ failed to incorporate recognized mental limitations into Mr. Oberg's RFC and subsequent hypothetical questions posed to the VE, the ALJ erred in relying upon the

PAGE 23 – OPINION AND ORDER

VE testimony that there were significant jobs in the economy that Mr. Oberg could perform. *See Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (finding that a hypothetical question posed to a vocational expert must "include all of the claimant's functional limitations, both physical and mental"); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value[.]" (citations and internal quotation marks omitted)).

**F.  Evidence Submitted to the Appeals Council Regarding Mr. Oberg's Date Last Insured**

After the ALJ issued his opinion finding Mr. Oberg not disabled, Mr. Oberg sought review from the Appeals Council and submitted additional evidence for their review. AR 264-270. This evidence includes an updated Certified Earnings Report indicating that Mr. Oberg's date last insured may have changed. *Id.* at 277-78. Mr. Oberg argues that the addition of this evidence to the record renders the ALJ's determination that Mr. Oberg's date last insured was March 30, 2009 no longer supported substantial evidence.

District courts must consider additional evidence submitted to the Appeals Council. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). This evidence is "part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Id.* The newly submitted evidence shows that Mr. Oberg's date last insured is June 30, 2010.

Mr. Oberg's applied for both DIB and SSI. AR 148-153, 154-158. DIB benefits are granted based on income earned and therefore eligibility is partially dependent on determining how many "quarters of coverage" an applicant has. 20 C.F.R. § 404.101. On the other hand, eligibility for SSI benefits is not contingent upon previously earned income, but is instead available to individuals who are disabled and have limited income or assets. 42 USC § 1382(a)(1). Despite this difference in determining eligibility, the regulations governing DIB

and SSI are essentially identical. Both DIB and SSI require a finding of disability, and both use the sequential analysis to determine a claimant's eligibility for benefits.

Because the ALJ was evaluating Mr. Oberg's eligibility for both DIB and SSI benefits, his review did not stop at the end of Mr. Oberg's date last insured. The ALJ considered significant evidence in the record that occurred after March 30, 2009. *See, e.g.*, AR 526-43, 578, 594. Additionally, none of the ALJ's findings nor the ALJ's reasoning demonstrate that the ALJ considered Mr. Oberg to be disabled after March 30, 2009, but was constrained by the date last insured from making a finding of disability. To the contrary, the ALJ found Mr. Oberg was not disabled for purposes of both SSI (for which the date last insured is irrelevant) and DIB.

Considering the record as a whole, including the evidence Mr. Oberg submitted to the Appeals Council, the change in Mr. Oberg's date last insured does not affect the ALJ's overall disability determination. Upon remand, however, the ALJ should consider Mr. Oberg's DIB application based on the applicable date last insured.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Mr. Oberg is not disabled and REMANDS for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 24th day of July 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge